UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN R. HOOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  12-11368-JGD |
| JEFFREY GRONDOLSKY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
AND RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

December 5, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

The Petitioner, Jonathan R. Hood, was sentenced by the United States District Court for the Northern District of New York to 39 months of incarceration for a drug offense, with 15 months to be served concurrently with a state sentence, and 24 months to be served consecutively to the state sentence.  Hood has brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the way the Bureau of Prisons ("BOP") applied his 153 days of Good Conduct Time ("GCT") to his sentence.  The BOP applied the 59 days Hood earned during the first 15 months to the beginning of his sentence, thereby altering the date on which he was deemed to have started his concurrent federal sentence but not altering his release date, and then applied the remaining 94 days to the end of his consecutive sentence, thereby advancing his release date from federal

custody by 94 days.  By his habeas petition, Hood contends that the full 153 days of GCT should have been applied to the end of his sentence, thereby advancing his release date to January 5, 2013.  The Respondent has countered with a motion for summary judgment arguing that it properly applied Hood's GCT and that his release date should be March 5, 2013.

For the reasons detailed herein, this court finds that there is no basis for the BOP to apply GCT to the beginning of Hood's concurrent sentence, and that all 153 days should have been applied to the end of Hood's sentence.  Therefore, the Petition for a Writ of Habeas Corpus (Docket No. 1) is ALLOWED, and the Respondent's Motion for Summary Judgment (Docket No. 16) is DENIED.  Hood's release date should be set at January 5, 2013.

## II.  STATEMENT OF FACTS[1]

The material facts are not in dispute.  Hood was arrested on November 27, 2007 by local authorities in Albany, New York, on a state warrant for criminal sale of a controlled substance.  On June 23, 2008, Hood was sentenced to 5 years in state prison on the drug charge.  He was given 292 days of prior custody credit.  As detailed below, he completed his state sentence and was released from state custody into federal custody on June 8, 2011.

---

[1] Most of the facts are derived from the Declaration of Andrew Roush, who is employed by BOP as a Management Analyst at the Designation and Sentence Computation Center in Grand Prairie, Texas.  (Docket No. 17-1).

Meanwhile, in or about January 2008, Hood was charged in the United States District Court for the Northern District of New York as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He pleaded guilty and, on July 2, 2008, was sentenced to a term of 39 months, of which 15 months were to be served concurrently with, and 24 months were to be served consecutively to, the state sentence.  After sentencing, he was returned to a prison operated by the State of New York, which remained his primary custodian, until June 8, 2011.  On that date, he was deemed to have satisfied his state sentence and his concurrent federal sentence, and was released to the custody of the federal authorities to begin his 24-month consecutive sentence.  Twenty-four months from June 8, 2011 is June 7, 2013.

Pursuant to 18 U.S.C. § 3624(b)(1), "a person who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of a prisoner's sentence, beyond the term served of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner displayed exemplary compliance with institutional disciplinary regulations . . . ."  The BOP has determined that Hood is entitled to GCT for his entire 39 month sentence, even though part of it was served in state custody.  See Resp. Mem. (Docket No. 17) at 3 n.1.  This is consistent with the BOP's Program Statement, which "provides that federal prisoners serving time in state prison *after* their concurrent federal sentence is imposed enjoy a presumption that they will receive the maximum 54 days per year of GCT credit unless

the state prison provides documentation of behavior which warrants disallowance of that credit." Schleining v. Thomas, 642 F.3d 1242, 1246 n. 4 (9th Cir. 2011) (emphasis in original) (citing 2003 BOP Program Statement 5160.05 ("Designation of State Institution for Service of Federal Sentence")).[2] The parties agree that Hood is entitled to a total of 153 days of GCT for his 39 month sentence. However, they disagree as to how it should be applied.

The BOP treated Hood's federal GCT days differently, depending on whether he earned those days in state custody or federal custody. Thus, with respect to the 15-month concurrent sentence Hood served in state custody, the BOP determined that Hood was entitled to 59 days of GCT, but applied it to the beginning of his sentence as follows:

> To calculate the start of the 15-month concurrent portion, BOP looked back 15 months from June 8, 2011, the date Hood entered federal custody. This resulted in an original "Date Computation Began" of March 7, 2010 (June 8, 2011 - 15 months = March 7, 2010). BOP then applied 59 days of Good Conduct Time (the amount applicable to a 15-month term) resulting in a corrected "Date Computation Began" of May 6, 2010 (March 7, 2010 + 59 days = May 6, 2010).

---

[2] This Program Statement can be found at www.bop.gov/policy/progstat/5160_005.pdf. It provides that in order to effectuate concurrent federal and non-federal sentences in a non-federal institution, the BOP designates the non-federal institution for service of the federal sentence. Id. at 3-5. Although not expressly confirmed by the Respondent, this presumably is what occurred in Hood's case since he was given credit on his federal sentence for the 15 months he served in state custody. According to the BOP Program Statement, federal inmates are entitled to GCT for time served in state custody in furtherance of their federal sentences. Id. at 10.

Resp. Mem. at 2-3.  The BOP admits that this application of GCT does not affect Hood's release date at all.  Id.  It neither advanced the date Hood was released from state custody to federal custody, nor advanced his ultimate release from federal custody.  Rather, according to the BOP, it took "into account the Good Conduct Time applicable to the concurrent portion of the sentence" for administrative purposes only, i.e., "in order to arrive at the proper DCB [Date Computation Began]."  Roush Decl. ¶ 11.  The BOP has cited to no rules, regulations or statutes supporting the application of GCT to the beginning of a sentence.

With respect to the 24 months of Hood's sentence that was to be served consecutively to the state sentence, the BOP determined that he was eligible for 94 days of GCT.  As noted above, Hood entered federal custody on June 8, 2011.  Twenty-four months from then would be June 7, 2013, and applying 94 days of GCT results in a release date of March 5, 2013.  Resp. Mem. at 2.  If, however, Hood is given full credit for his 153 days of GCT, he would be released on January 5, 2013 (June 7, 2013 - 153 days = January 5, 2013).

In sum, according to the Respondent "when BOP takes custody of an inmate ordered to serve part of his federal sentence concurrently with a previously imposed state sentence, BOP credits Good Conduct Time *up front* with regard to the (already served) concurrent portion of the inmate's sentence and *at the end* of the consecutive portion of his sentence."  Resp. Mem. at 3 (emphasis in original).  For the reasons detailed below,

this court finds this application to be inconsistent with the statutory scheme and BOP's own policies, and arbitrary and capricious.

### III. ANALYSIS

As quoted above, 18 U.S.C. § 3624(b)(1) authorizes the BOP to award GCT "of up to 54 days at the end of each year of the prisoner's term of imprisonment . . . ." This language, which was included in the Sentencing Reform Act of 1984, "creates a system under which 'credit' is 'earned' 'at the end of the year' based on an evaluation of behavior 'during that year'" and reveals a Congressional "purpose to move from a system of prospective entitlement to a system of retrospective award." Barber v. Thomas, 130 S. Ct. 2499, 2505 (2010) (internal citation omitted). The purpose of good time credits is to "provide an incentive for prisoners to comply with institutional disciplinary regulations. The good time [credit] is limited (to 54 days per year) and tailored to its purpose — credit is earned at the end of the year after compliance with institutional rules is demonstrated and thereby rewards and reinforces a readily identifiable period of good behavior." Id. (internal punctuation omitted). Similarly, the BOP Program Statement that sets forth BOP's method of calculating GCT provides that GCT is awarded at the end of every year served, and is applied to reduce the amount of time spent in custody by subtracting the GCT from the end date of a prisoner's sentence. See BOP Program Statement 5880.28 at 1-40 *et seq.*[3] As the BOP Program Statement expressly provides:

---

[3] BOP Program Statement 5880.28 can be found at www.bop.gov/policy/progstat/5880_028.pdf.

> For release purposes, subsection 3624(b) is the most important
> provision in the computation process since the proper application of
> that subsection determines the actual statutory date of release for the
> prisoner.  **The release date is determined, of course, by sub-
> tracting the total amount of GCT awarded during the term of the
> sentence from the full term date of the sentence.**  The <u>total</u> amount
> of GCT awarded during the term of a sentence is found by adding
> the amount of GCT awarded at the end of each year to the amount of
> GCT awarded for the last portion of a year.

<u>Id.</u> at 1-44 (bold type emphasis added).  There is nothing in the statutory scheme or the BOP regulations which expressly or implicitly authorizes BOP to credit good conduct up front, much less negate the reduction in time served that the earned credit is supposed to accomplish.

The BOP, while recognizing that Hood is entitled to the GCT for that portion of his sentence served in state custody, nevertheless limited the period to which the reduction in time-served would be applied to that portion of Hood's sentence served in federal custody.  In support of this position, the BOP cites to 18 U.S.C. § 3585(a), which defines the onset of an inmate's term of imprisonment as follows:

> A sentence to a term of imprisonment commences on the date the
> defendant is received in custody awaiting transportation to, or arrives
> voluntarily to commence service of a sentence at, the official deten-
> tion facility at which the sentence is to be served.

<u>See</u> <u>Resp. Mem.</u> at 4.  Thus, the Respondent argues, based on this language the BOP determined that Hood's "term of imprisonment" began on June 8, 2011, the date he entered BOP custody.  <u>Id.</u>  This argument is illogical, given that the BOP has recognized that 15 months of the time Hood spent in state custody satisfied the concurrent portion of

his federal sentence, and also recognized that Hood is entitled to the full GCT for the 39 month federal sentence.  Moreover, BOP Program Statement 5160.05 provides that "[w]hen a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed, the Bureau implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence." BOP Program Statement 5160.05 at 3, ¶ c.[4]  Thus, Hood's term of imprisonment did not begin when he was transferred to the federal prison.  Rather he began serving his federal sentence while he was in the state facility.  See id. at 3, ¶ f (18 U.S.C. § 3585(a) indicates that a sentence commences "once a facility is designated").

When a federal sentence is ordered to be served concurrently with a state sentence, the time a prisoner spends in state custody "form[s] part of his federal sentence," and the inmate is entitled to GCT during the period in state custody.  Lopez v. Terrell, 654 F.3d 176, 186 (2d Cir. 2011).  Thus, while "a defendant is eligible for GCT only as to the 'term of imprisonment' which constitutes the defendant's federal sentence as defined by § 3585," that "term" includes time served in state custody following sentencing by the federal court.  Id. at 184-85; see also Schleining, 642 F.3d at 1246 ("the BOP's own regulations allow prisoners serving concurrent state-federal sentences *in state prison* to

---

[4] While the BOP has the authority to designate the facility at which a sentence is to be served, it does not have the authority to disregard an express order of the federal court that a federal sentence be served concurrently with a state sentence.  See Setser v. United States, 132 S. Ct. 1463, 1468, 1469 n.3 (2012).  Moreover, by crediting Hood with the time he served in state custody toward his 39 month federal sentence, the BOP had obviously designated the state facility as the place to serve the federal sentence.

accrue GCT Credit toward their federal sentence *after* their federal sentence has been imposed." (emphasis in original)); Romandine v. United States, 206 F.3d 731, 738 (7th Cir. 2000) (in the case of concurrent sentences, the state prison is designated as a place of federal confinement, "so that the clock would start to tick on the federal sentence."); United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993), and cases cited (while a "federal sentence does not begin to run until the defendant is delivered to the place where the sentence is to be served," that place can be a state facility designated for service of the federal sentence) (internal quotation and citation omitted)). Since Hood's federal sentence commenced while he was in state custody, there is no basis for the BOP to treat the GCT he earned in state custody differently than the time he earned in federal custody.

      The Respondent has cited no cases in support of its current position and none have been found. Rather, as the Respondent acknowledges, the only case on point determined the BOP's allocation method to be arbitrary and capricious. Thus, in Hill v. Cowin, 717 F. Supp. 2d 268 (N.D.N.Y. 2010), the court concluded that applying GCT to the beginning of a prisoner's concurrent federal sentence served in a state facility, and applying only the GCT days earned in a federal facility to the end of the sentence, was "contrary to the statute, [BOP's] own policy statement and common sense." Id. at 269-70. Since BOP policy, consistent with the statutory scheme, requires that "the total amount of GCT awarded during the term of the sentence" be subtracted from "the full term date of the sentence," the Hill court concluded that there was no basis to give a prisoner his GCT "up front." Id. at 270. This court agrees.

The Respondent urges this court to disregard Hill because "its reasoning is flawed." Resp. Mem. at 6. Specifically, the Respondent argues that the Hill court misconstrued Barber v. Thomas, 130 S. Ct. 2499 (2010), when the Hill court cited Barber for the proposition that the phrase "term of imprisonment," as used in § 3624(a), refers to the "sentence imposed," when the Barber court in fact ruled that "term of imprisonment" refers to prison time actually served. Resp. Mem. at 6-7. The Respondent's argument, however, misreads both Hill and Barber. In fact, Hill is entirely consistent with Barber.

In Barber, the Court addressed the issue of whether GCT should be calculated on the basis of time a prisoner actually served, or on the potential amount of GCT which could be earned on the full sentence imposed. Most of the argument was based on the meaning of the phrase "term of imprisonment" as found in 18 U.S.C. § 3624. The Court noted that this phrase was used differently in different parts of the GCT statute. Thus, the Barber Court found that the phrase "term of imprisonment" "can refer to the sentence that the judge imposes, see, e.g., § 3624(a) ('A prisoner shall be released' at the end of 'the prisoner's term of imprisonment, less any time credited' for good behavior), but it can also refer to the time that the prisoner actually serves." Barber, 130 S. Ct. at 2507. Consequently, the Barber Court concluded, while the phrase "term of imprisonment" in § 3624(a) referred to the sentence imposed, in § 3624(b) ("a prisoner may receive credit . . . at the end of each year of the prisoner's term of imprisonment") it refers to "time actually served rather than the sentence imposed by the judge." Id. at 2506-07. Thus, the Hill court accurately cited Barber for the proposition that, under § 3624(a), the reference

to "term of imprisonment" was to the sentence that the judge imposed.  See Hill, 717 F. Supp. 2d at 270.

The court's analysis in Hill is entirely consistent with Barber.  Both recognized that GCT was to be earned (and applied) to the end of a prisoner's sentence, and that the goal of GCT was to reduce the amount of time a prisoner spent in custody.  See Barber, 130 S. Ct. at 2504-05.  As the Barber Court explained, assuming full credit each year, at the end of each year the prisoner served, 54 days would be "set aside" and those days would be accumulated.  These amounts would then be subtracted from the date the prisoner would have been released based on the sentence imposed.  Id. at 2502-03.  This is precisely what the Hill court did.  Unlike the BOP in this case, Hill gave the inmate credit for every year of the federal sentence he served (regardless in which facility) and deducted that time from the end date based on the sentence imposed.  Since Hill's analysis is consistent with the Supreme Court's decision in Barber, there is no reason to disregard Hill.

The Respondent also urges this court to disregard Hill because "the Hill court engaged in faulty reasoning when it stated that 'the BOP's interpretation . . . gives a prisoner in Petitioner's position no benefit for complying with prison rules because, by crediting the majority of [Good Conduct Time] up front, it will have little impact on his actual release date.'"  Resp. Mem. at 7 (citing Hill, 717 F. Supp. 2d at 270).  Rather, according to the Respondent, "[a] federal inmate serving the concurrent portion of his sentence in state prison is motivated to comply with *state prison rules* in order to get

-11-

state-law merit time allowances, which will shorten the time period until his release date from state prison." Id. This may or may not be true, depending on how the state calculates its good time credit. In any event, this argument is irrelevant here, since nothing Hood did would shorten the 15 months of his federal sentence that he was serving concurrently with his state sentence. Moreover, there is no reason why a prisoner should not also be motivated to shorten his federal prison sentence in accordance with federal law. This would not impose any undue burden on BOP. As the Second Circuit recently held:

> Although it may be more difficult for the BOP to monitor an inmate's conduct when he or she is in state custody, if the agency has advance knowledge that such custody constitutes part of the inmate's federal sentence, there is a clear incentive for it to do so. Here, because the district court ordered that [Petitioner's] federal sentence run concurrently with his undischarged state prison term, the BOP knew from the date of sentencing that any time [Petitioner] spent in state custody from that point forward formed part of his federal sentence. Thus, the agency had an incentive to monitor [Petitioner's] behavior during the six months he spent in state custody following sentencing because it was aware that he was eligible for GCT during that period. See also Schleining, 642 F.3d at 1248 (observing that limiting the award of GCT to an inmate's federal sentence "not only tracks the language of § 3585(a) and § 3624(b)(1); it also makes practical sense" because it puts "the BOP on notice of its responsibility either to house the prisoner itself or to monitor his continued incarceration in state prison").

Lopez, 654 F.3d at 186-87.

Finally, the Respondent's policy arguments are not persuasive. First, the Respondent argues that under his calculations, Hood would be released earlier than an inmate who was sentenced to 24 months in a federal prison even though they both were

sentenced to 24 months in a federal prison. Resp. Mem. at 5. This argument ignores the fact, however, that Hood's federal sentence was 39 months, not 24, and he began serving his federal sentence 15 months earlier, albeit in a state facility. There is nothing inappropriate in Hood being released earlier than a prisoner who was sentenced to only 24 months and entered prison on the same day Hood was transferred to the federal prison after already having served 15 months.

The Respondent next argues that Hood may get "double" good conduct time if his state sentence is shortened due to state law credit. Resp. Mem. at 6. Again, however, this argument ignores reality. Regardless of how long Hood served on his state sentence, he served a full 15 months of his federal sentence (in a state facility). Nothing in the federal GCT calculation shortened his state sentence. Nor did the fact that he may have earned state credits shorten his federal sentence. Based on a 39 month sentence, Hood is entitled to 153 days of GCT. There is no reason to deprive him of those credits.

In sum, Hood received a federal sentence of 39 months. He earned 153 days of GCT which was to be deducted from the end date of his sentence. His federal "term of imprisonment" commenced while he was in state custody serving the concurrent portion of his federal sentence. Therefore, Hood's release date is properly set at January 5, 2013. By failing to give Hood actual credit at the end of his sentence for that portion of his federal sentence that was served in state custody, the BOP acted in contravention of the applicable statutes and its own policies.

## IV.  ORDER

For the reasons detailed above, the Respondent's Motion for Summary Judgment (Docket No. 16) is DENIED and the Petition for a Writ of Habeas Corpus (Docket No. 1) is ALLOWED. Hood's release date is set at January 5, 2013.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge